NOT DESIGNATED FOR PUBLICATION

No. 127,763

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

PATRICK LEVI MOODY,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Submitted without oral argument. Opinion filed September 12, 2025. Affirmed.

*Andrew R. Davidson,* deputy district attorney, *Thomas Stanton*, district attorney, and *Kris W. Kobach*, attorney general, for appellant.

*Patrick H. Dunn,* of Kansas Appellate Defender Office, for appellee.

Before HILL, P.J., MALONE and HURST, JJ.

PER CURIAM: A law enforcement officer stopped Patrick Levi Moody for improperly stopping his bicycle while riding down an alley and, pursuant to the officer's investigation, contacted dispatch to run Moody's name for outstanding warrants. Dispatch incorrectly informed the investigating officer that Moody had an outstanding felony warrant in Colorado rather than Illinois, which would not have been extraditable. Upon hearing this information, Moody took off running and Officer Ryan Aden pursued on foot. Moody's flight path included running through a six-foot picket fence, and while pursuing, Officer Aden's head hit the fence crossbeam resulting in serious injury.

1

The State charged Moody with reckless aggravated battery and felony interference with law enforcement related to his flight. After initially being bound over on both charges, Moody moved to dismiss the aggravated battery charge—which the district court granted. The State appeals, claiming it showed probable cause to support the charge. While the evidence that Moody fled from law enforcement is clear, the State failed to show probable cause that Moody's evasive run constituted reckless aggravated battery. Accordingly, the district court is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

On October 10, 2023, while on patrol in Hutchinson, Officer Aden stopped Moody for rolling through an alleyway on his bicycle without properly stopping. Pursuant to his investigation of this bicycle-riding offense, Officer Aden ran Moody's name through dispatch and was advised Moody had a possible warrant out of Colorado for failure to appear on a felony theft charge. As another officer arrived on scene to assist, Officer Aden sought to detain Moody in handcuffs until he could confirm the warrant's validity, but Moody was unwilling to be detained and ran away. Officer Aden pursued.

After fleeing on foot for approximately 20 or 30 seconds, Moody ran through a wooden picket fence. While trailing about 15 feet behind Moody, Officer Aden attempted to run through the cartoon-like hole in the fence created by Moody's crash through it but unfortunately struck his head on the crossbeam. Aden suffered a concussion and a laceration requiring twenty staples. Moody was eventually apprehended and charged with felony reckless aggravated battery and felony interference with law enforcement.

At Moody's preliminary hearing on December 4, 2023, both officers testified to the above facts. Moody sought to dismiss the reckless aggravated battery charge, arguing in part that although Moody should not have run, there was not probable cause to show that "somebody fleeing from law enforcement fifteen feet away from them causes

2

physical contact to cause this type of injury." In response, the State admitted that Moody did not make physical contact with the officer and "didn't cause bodily harm with his own body, like a normal battery," but argued Moody should nonetheless be bound over because his conduct was reckless and thus the State need not show intentional physical contact. The State explained its theory as follows:

"In other words, the harm may not be intentional in the sense that the offender intended physical contact with the other person but included actual physical contact which harms the person although the harm may not be intended. Recklessness does not transform into a specific intent crime but in this case he created an unjustifiable risk which resulted in the harmful injuries to Officer Aden.

. . . .

". . .[Moody] did create this circumstance that caused these injuries and we're asking the court to bind the defendant over. Crashing through a fence is something that doesn't usually happen during a pursuit and in this case, it did, and it caused an injury. He was behaving recklessly."

The district court initially bound the case over on both charges, reasoning Moody's foresight of the injury was not required but rather that it was enough the injury occurred while Moody acted recklessly. The court explained that:

"I don't think that Mr. Moody intended for the officer to hit his head but he recklessly engaged in the conduct whereby the disfigurement of the officer occurred. So, I agree with [the State], if it had been aggravated battery of a law enforcement officer, he would not have been able to meet his burden. But at this point charged as a regular aggravated battery, Court will allow it to transform or to proceed at this point to a trial."

The case was transferred to a different court division—and thus a different judge—for arraignment where Moody pled not guilty in January 2024. Moody then moved to dismiss the reckless aggravated battery charge, arguing the State failed to present sufficient evidence to establish the probable cause necessary to

3

bind him over for trial. According to Moody, the State failed to show the requisite consciousness of the potential risk and that "all battery charges require some kind of physical contact between the defendant and the victim, whether directly . . . or by his own physical actions, setting off a chain of events that result in the harmful contact to the person of the victim."

The State responded that officers have a duty to apprehend suspected criminals and that Officer Aden was "required to act on the warrant." According to the State, "[f]leeing suspects cause problems, officers are required to act," and Moody's flight "created a substantial and unjustifiable risk that someone might be harmed." The State therefore concluded, "This case should be permitted to proceed to allow a jury to decide if [Moody's] actions were reckless and ultimately responsible for the officer's injuries."

At the hearing on Moody's motion to dismiss the reckless aggravated battery charge, both parties generally reiterated the arguments they made in their respective motions. However, the State also argued that Moody's motion was untimely because it was filed more than 21 days after he entered his not-guilty plea. See K.S.A. 22-3208(4) ("The motion to dismiss shall be made at any time prior to arraignment or within 21 days after the plea is entered."). The district court dismissed the reckless aggravated battery charge, reasoning that "[t]here are legal consequences for running from an officer, but just simply the fact that the officer was in pursuit and got hurt, I don't think that rises to the level of aggravated battery." The court also addressed the State's timeliness argument by explaining that the court had some leniency with the timing and found justifiable cause to extend the deadline given that the trial date had not been set. The district court explained that the need for a transcript and its delay justified extended the deadline: "I do know that there is delay in receiving transcripts, and I know, [Moody's counsel], you would [have] needed that transcript to file this motion."

4

The State later dismissed the interference-with-law-enforcement charge so it could appeal the district court's dismissal of the reckless aggravated battery charge—which is the subject of this appeal.

DISCUSSION

After the only remaining charge against Moody was dismissed, the State may appeal the district court's decision as a dismissal of a complaint, information, or indictment. K.S.A. 22-3602(b)(1); *State v. Betts*, 316 Kan. 191, 197, 514 P.3d 341 (2022). The State asks this court to reverse the dismissal of the reckless aggravated battery charge, arguing the district court erred in finding insufficient evidence supported the charge. As an apparent afterthought, the State also argues the district court erred by permitting Moody to file his motion out of time. While the State makes a cursory timeliness argument, it is insufficiently raised for this court's review. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) ("Issues not briefed or not adequately briefed are deemed waived or abandoned. A point raised incidentally in a brief but not argued is also deemed abandoned. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. [Citations omitted.]"). The district court set forth its reasoning for extending the filing deadline—namely, the delay in Moody receiving the preliminary hearing transcript—and the State fails to challenge or even address the district court's reasoning. Therefore, rather than opine about the arguments supporting the State's timeliness objection, this court will address the merits of the State's appeal, which comprises the vast majority of its appellate argument.

This court exercises unlimited review over a district court's dismissal of a criminal charge for lack of sufficient evidence at the preliminary hearing. *State v. Washington*, 293 Kan. 732, 734, 268 P.3d 475 (2012) ("On appeal from that ruling [on a motion to dismiss], an appellate court reviews the district court's probable cause finding at a

5

preliminary hearing de novo."). To the extent this court's resolution of the appeal requires statutory interpretation, it likewise exercises unlimited review. *State v. Gomez*, 320 Kan. 3, 13, 561 P.3d 908 (2025). In other words, no deference is owed to the district court's statutory interpretation or legal conclusion.

Every person charged with a felony, unless that charge resulted from a grand jury indictment, is entitled to a preliminary hearing. K.S.A. 22-2902(a). At that preliminary hearing, a magistrate shall determine whether "there is probable cause to believe that a felony has been committed by the defendant." K.S.A. 22-2902(c). Therefore, "the magistrate at a preliminary hearing examines the evidence to determine (1) whether a crime has been committed and (2) whether there is probable cause to believe that the accused committed the crime." *Washington*, 293 Kan. at 733. If the magistrate finds probable cause, the defendant shall be bound over, but if there is not probable cause to support the charge, "the magistrate shall discharge the defendant." K.S.A. 22-2902(c).

Unlike the standard of proof beyond a reasonable doubt required at trial, at a preliminary hearing the State merely needs to demonstrate probable cause that the defendant committed the charged offense. *State v. Rozell*, 315 Kan. 295, Syl. ¶ 2, 508 P.3d 358 (2022). "Probable cause at a preliminary examination signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." 315 Kan. 295, Syl. ¶ 2. This standard does not permit the court to evaluate the possibility of conviction or to assess witness credibility; the court must accept the State's version of the available evidence. See *State v. Anderson*, 270 Kan. 68, 71, 12 P.3d 883 (2000); see also *Rozell*, 315 Kan. 295, Syl. ¶ 2. Clearly, the preliminary hearing evidentiary standard is not excruciatingly demanding. "Even where the evidence is weak, the defendant should be bound over for trial if the evidence tends to disclose that the offense charged was committed and that the defendant committed it. [Citation omitted.]" *Washington*, 293 Kan. at 734.

The defendant's only mechanism for challenging the sufficiency of the evidence presented at the preliminary hearing is through a motion to dismiss filed in the district court. *Washington*, 293 Kan. at 734. That is what occurred here.

*The State Failed to Present Probable Cause Supporting its Charge of Reckless Aggravated Battery.*

Moody was charged with reckless aggravated battery, which is "recklessly *causing great bodily harm* to another person or disfigurement of another person." (Emphasis added.) K.S.A. 21-5413(b)(2)(A). A person acts recklessly "when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 21-5202(j). While defendants acts recklessly when they know they are "putting others in imminent danger," they "need not foresee the particular injury that results." *State v. Bolze-Sann*, 302 Kan. 198, Syl. ¶ 2, 352 P.3d 511 (2015). The State argues "the district court's finding was erroneous given the legal standard for recklessness." The State contends Moody "hurled his body through a fence, crashing through the fence pickets," and took "a reckless path through a fence," but does not contend Moody directly or indirectly physically touched Officer Aden. The State then spends a large portion of its appellate brief discussing the reasonableness of Moody's reaction to being served with a warrant— which is not relevant to whether the State demonstrated probable cause supporting the charge of reckless aggravated battery.

The State apparently contends that because Moody acted recklessly by running away and through a fence, any reasonably foreseeable *injury* to a person demonstrates probable cause that Moody committed reckless aggravated battery. This erroneously conflates Moody's mens rea with the actus reus of reckless aggravated battery. Rather, the State must prove both Moody's recklessness *and* that he committed the act of aggravated

7

battery—which is "causing great bodily harm to another person." K.S.A. 21-5413(b)(2)(A). Causing great bodily harm does not just mean that someone suffers an injury but rather that Moody committed "'any *touching* of the victim against [the victim's] will, *with physical force*, in an intentional hostile and aggravated manner" that caused the injury. (Emphases added.) *State v. Robinson*, 306 Kan. 1012, 1027, 399 P.3d 194 (2017) (quoting *State v. Dubish*, 234 Kan. 708, 715, 675 P.2d 877 [1984]). Thus, the State must also show that Moody touched, either directly or indirectly, Officer Aden with physical force against his will.

If merely showing that Moody acted recklessly and someone therefore suffered an injury established probable cause that he committed reckless aggravated battery, then the State could be correct. Evading arrest by leading an officer on a hazardous chase by crashing through a fence is inherently dangerous. At a minimum, Moody consciously disregarded a substantial and unjustifiable risk of putting the pursuing officer in imminent danger. Moody need not foresee that the imminent danger included the officer hitting his head on a crossbeam. It is also undisputed that Officer Aden sustained an injury during the pursuit. The State likely presented probable cause to establish that Moody acted recklessly and that Officer Aden sustained an injury.

However, as Moody accurately argues, the reckless aggravated battery offense requires the State show more than recklessness—the State must also show probable cause that Moody caused "'great bodily harm'" to Officer Aden by touching Aden with physical force in an intentional and aggravated manner. *Robinson*, 306 Kan. at 1027 (quoting *State v. Green*, 280 Kan. 758, 765, 127 P.3d 241 [2006]). Great bodily harm is "'more than slight, trivial, minor, or moderate harm, [that] does not include mere bruising, which is likely to be sustained by simple battery.'" *Robinson*, 306 Kan. at 1027 (quoting *Green*, 280 Kan. at 765). "Causing great bodily harm" therefore means the defendant physically touched the victim against their will with physical force, either directly or indirectly, in

8

an intentional hostile and aggravated manner which resulted in more than the kind of minor harm that is likely sustained by simple battery.

Contrary to the State's implication, a charge for reckless aggravated battery requires the State show more than reckless conduct and a resulting injury, even if that reckless conduct arguably caused the injury. While the State assigns error to the district court's failure to review the preliminary hearing transcript—this court's de novo review includes the preliminary hearing transcript and gives no deference to the district court's review. The State presented no evidence that Moody directly or indirectly touched Officer Aden using physical force. Officer Aden ran into a crossbeam, but there was no evidence that Moody interacted with the crossbeam to cause it to make physical contact with Aden. The State does not cite a single case in which a battery has been committed without *any* touching—direct or indirect—between the defendant and the victim. Moody's conduct likely exposed him to criminal liability, but it simply is not an aggravated battery.

The State relies on an opinion from a panel of this court where it found sufficient evidence to support a misdemeanor battery conviction when Deron McCoy, Jr., was operating a motor vehicle in a drive-thru and an investigating officer approached and directed him to put the car in park. *State v. McCoy*, 34 Kan. App. 2d 185, 186-87, 116 P.3d 48 (2005). Instead, McCoy quickly maneuvered his car to leave, hitting a different car and injuring the investigating officer's hand that had been on McCoy's car handle. 34 Kan. App. 2d at 186-87. The *McCoy* facts are readily distinguishable in that there was no question that McCoy maneuvered his vehicle in a manner that caused it to touch the investigating officer which resulted in injury. There is no allegation here that Moody touched, maneuvered, or otherwise interacted with the crossbeam or any part of the fence with physical force causing it to touch or otherwise interact with Officer Aden. The State simply failed to present any evidence that Moody touched Officer Aden, either directly or indirectly, and therefore failed to present evidence sufficient to support a battery offense.

The State argues it is the purview of the jury to wade through evidence to determine whether a crime has been committed—which is true when presented with sufficient facts to support that conclusion. But defendants are entitled to a judgment of acquittal when the State failed to present facts supporting an essential element of the crime charged. See K.S.A. 22-3419(1) ("The court on motion of a defendant or on its own motion shall order the entry of judgment of acquittal of one or more crimes charged in the complaint, indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such crime or crimes."); *State v. Llamas*, 298 Kan. 246, 253, 311 P.3d 399 (2013) (courts are obligated to order the entry of judgment of acquittal when there is "not sufficient evidence of each element of a charged crime").

CONCLUSION

While Moody's flight from justice likely supports criminal charges, it does not support an aggravated battery charge. In acting recklessly, Moody did not touch Officer Aden, either directly or indirectly, with physical force and thus a jury cannot be asked to find him guilty of a crime for which the State has not submitted sufficient evidence. The district court's dismissal of the reckless aggravated battery charge is affirmed.

Affirmed.

10